In the Matter of 20546 CORP., Debtor.

No. 73 B 767.

United States District Court,
S. D. New York.

Feb. 19, 1976.

Weil, Gotshal & Manges, New York City, Harvey R. Miller, Michael L. Cook, Richard P. Krasnow, New York City, of counsel, for 20546 Corp., debtor-appellee.

White & Case, New York City, P. B. Konrad Knake, Thomas J. O'Sullivan, Richard W. Reinthaler, Lynne Malina, New York City, of counsel, for U. S. Steel and Carnegie Pension Fund, Inc., appellant.

GAGLIARDI, District Judge.

This is an appeal by U. S. Steel & Carnegie Pension Fund ("U. S. Steel") from an order denying its application pursuant to Section 386 of the Bankruptcy Act, 11 U.S.C. § 786, to set aside the confirmation of the debtor-corporation's arrangement with its unsecured creditors and granting the debtor's motion for summary judgment.

The debtor-appellee, 20546 Corp. ("20546"), filed its petition in the Bankruptcy Court for confirmation of a Chapter XI arrangement, Bankruptcy Act § 322, 11 U.S.C. § 722, on July 31, 1973. The arrangement provided that the debtor would pay eight of its nine outstanding debts in cash within 30 days of the date of the confirmation. The other debt, $1,225,626.34, owed to the Avamer Company, was to be paid in semi-annual installments of 10% each. In addition, the arrangement contained a rejection of a lease to certain property owned by U. S. Steel, which lease had been assigned to the debtor. Bankruptcy Act § 357(2), 11 U.S.C. § 757(2).

The first meeting of creditors took place on September 6, 1973. All creditors accepted the proposed arrangement. U. S. Steel, which was not a creditor,

appeared at this hearing and voiced objection to the provision rejecting the lease of its property. Counsel for U. S. Steel indicated that the debtor had no in personam liability under the lease and therefore would not be benefitted by its rejection. He further asserted that U. S. Steel had "reason to believe that one of the major purposes of this reorganization proceeding is in aid of possibly releasing the solvent guarantors" of the lease. The Bankruptcy Court rejected U. S. Steel's request and confirmed the arrangement.

Subsequent to the confirmation, U. S. Steel initiated an action in the state courts to recover rental on its property from the guarantors of the lease. The guarantors interposed in defense the rejection of the lease by the debtor. U. S. Steel then filed its application in the Bankruptcy Court to set aside the confirmation of the arrangement.

U. S. Steel alleges that the guarantors of the lease control the debtor and attempted to release themselves from any personal liability under the lease by fraudulently procuring confirmation of the arrangement under Chapter XI.

According to U. S. Steel, the lease in question was originally made with the Durst Buildings Corporation in 1968. The lease provided for no personal liability on the part of the tenant and permitted the tenant to assign the lease without consent of the landlord. U. S. Steel did insist, however, that Seymour, David, and Roy Durst, and their sister Alma Askin (the "Durst Group") provide personal guarantees on the lease. The lease was subsequently amended and the guarantees were extended to cover rental payments until March, 1976.

Under the lease, annual payments for the property rose from approximately $500,000 to more than $1,000,000 after March 31, 1973. U. S. Steel claims that at several times until early March, 1973 the Durst Group met with U. S. Steel representatives and attempted to reduce their potential liabilities under the lease. No agreement, however, was reached.

It is alleged in the application that on March 14, 1973 the Durst Group resigned as officers of 20546 Corp. and other persons were installed in their places. On March 27, 1973 a new entity, Avamer Broadway Company ("Avamer"), was formed as a partnership consisting of the Durst Group and S.T. Rudd Construction Corp., which allegedly is an affiliate of the Durst Buildings Corporation. On that same day the lease was assigned to Avamer. U. S. Steel claims that the only property ever held by Avamer was the property which is the subject of the lease and that in fact the only purpose for the creation of Avamer was to hold this lease.

Avamer operated the property for less than a month and on April 25, 1973 assigned the lease to 20546, receiving as consideration a note due July 2, 1973, in the amount of $1,242,419.30. U. S. Steel claims that 20546 had no significant assets or sources of income nor any prospective ability to meet the payment of the note. According to U. S. Steel, 20546 was a dormant corporation which was revived by the Durst Group specifically to acquire the leasehold which had become a poor investment as a result of the economic conditions of 1973. 20546 would then be obligated to an affiliate entity in an amount far in excess of the value of the lease, and, thus forced into insolvency, could reject the lease in an attempt to protect the individual guarantors.

Shortly after the note to Avamer became due, 20546 Corp. filed its petition for an arrangement under Chapter XI. The petition listed nine creditors of whom it is alleged that three were affiliates of 20546 Corp. The other creditors included 20546's attorneys whose claim amounted to $7,500, Consolidated Edison Company whose claim was for $43.35, three other creditors whose claims in the aggregate totalled approximately $4,200 and one debt of $8.03. U. S. Steel points out significantly that the allegedly affiliated creditors accounted for more than 98% of the total debt owed by the appellee.

In its application to set aside the confirmation, U. S. Steel has alleged—as it must under the statute—that the debtor procured confirmation of the arrangement through fraudulent means and that U. S. Steel did not gain knowledge of the fraud until after the confirmation.[1] Bankruptcy Act § 386, 11 U.S.C. § 786. The Bankruptcy Court held that appellant had knowledge of the allegedly fraudulent nature of the arrangement prior to confirmation and denied U. S. Steel's application.

While the parties herein have at various points in the proceedings presented varying versions of what facts were known to U. S. Steel prior to confirmation, it appears undisputed at this point that prior to confirmation U. S. Steel had knowledge of the various assignments of the lease and suspected that the rejection of the lease in the Chapter XI arrangement might be designed to affect the liability of the guarantors. It was not, however, aware of the interrelationships between the Durst Group, Durst Buildings Corporation, Avamer, 20546 Corp., and various creditors of the appellee until after confirmation of the arrangement. Most of this information allegedly was first gained from discovery proceedings conducted in conjunction with the state court action.

■ It is well-established that the party seeking to have a confirmation set aside on the ground of fraud must show that it acquired knowledge of the fraud subsequent to confirmation of the arrangement. The language of the statute, Bankruptcy Act § 386, 11 U.S.C. § 786, in this regard is clear.[2] In re Isidor Klein, Inc., 22 F.2d 906, 909 (2d Cir. 1927); In re Crusader Oil Refining Corp., 47 F.Supp. 873 (D.N.J.1942). The key question here, then, is whether the information available to U. S. Steel prior to confirmation was of sufficient magnitude to preclude it from raising the issue of fraud at this juncture.

■ Upon the record below, this court finds that U. S. Steel did not have "knowledge" of the alleged fraud prior to confirmation within the meaning of § 386 of the Bankruptcy Act. The information available to U. S. Steel made it cognizant of the legal consequences which might flow from the rejection of the lease. At most, it may also have been aware of the intent of the debtor to release the guarantors from liability. These facts, however, do not constitute "knowledge" of that particular fraud which U. S. Steel claims was perpetrated on the Bankruptcy Court. The allegedly fraudulent activities were the design to force a dormant corporation into insolvency through the described complex structuring of the transactions and then the securing of an arrangement—which must be made in "good faith," Bankruptcy Act § 366, 11 U.S.C. § 766—upon the representations that the arrangement was for the "rehabilitation of (the debtor's) estate" and for the "protection of its creditors." These elements were apparently unknown to U. S. Steel at the time of confirmation.

It may well be, as appellee contends, that it is not unlawful for a corporation to secure an arrangement in order to protect individual guarantors. See In re Grayson-Robinson Stores, Inc., 321 F.2d 500 (2d Cir. 1963). Indeed, it is not inconceivable that the debtor could prevail in its contention that the failure to apprise the Bankruptcy Court of all the facts which have been described does not constitute a "fraud" within the meaning of § 386. The debtor may also be able

1. Section 386 provides that:

If, upon the application of parties in interest filed at any time within six months after an arrangement has been confirmed, it shall be made to appear that fraud was practiced in the procuring of [an] . . . arrangement and that knowledge of such fraud has come to the petitioners since the confirmation of such arrangement . . . the court may set aside the confirmation . . . or may reinstate the proceeding . . . and modify or alter the arrangement for the purpose of correcting the fraud.

2. See note 1, supra.

to demonstrate that U. S. Steel's allegations are unfounded.[3] These questions, however, should more properly be determined on remand to the Bankruptcy Court. The sole question before this court is whether U. S. Steel had knowledge prior to confirmation of the facts which it now alleges constituted a fraud and this court finds that it did not.

The decision of the Bankruptcy Court is reversed and remanded for proceedings consistent with this opinion.

So ordered.

---

**3.** U. S. Steel also argues that the rejection of the lease does not affect the liability of the individual guarantors. That question is not before this court. However, if U. S. Steel's contention is correct, the need to vacate the confirmation is unclear.